UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LEGEND LAKE PROPERTY OWNERS ASSOCIATION INC.,

Plaintiff,

v. Case No. 23-C-480

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,

Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff Legend Lake Property Owners Association Inc. filed this action under the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq.*, against Defendants United States Department of the Interior (DOI); Deb Haaland, in her official capacity as United States Secretary of the Interior; Bureau of Indian Affairs (BIA); Tammie Poitra, in her official capacity as the Midwest Regional Director of the Bureau of Indian Affairs; the Acting Midwest Regional Director of the Bureau of Indian Affairs; and the Interior Board of Indian Appeals (IBIA). The Association seeks judicial review of a March 24, 2023 decision issued by the IBIA, arising from the appeal of two decisions by the Midwest Regional Director of the BIA and the Acting Midwest Regional Director of the BIA, to accept lands into trust by the United States for the Menominee Indian Tribe of Wisconsin. The Association claims that the IBIA's March 24, 2023 decision violated the APA and that Defendants' unlawful agency action has injured the Association and its members. It seeks a declaratory judgment that the IBIA's decision violates the APA and should be vacated and/or remanded. This matter comes before the court on Defendants' motion to dismiss pursuant

to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. For the following reasons, the motion will be granted and the case will be dismissed.

**BACKGROUND**

The Menominee Indian Tribe of Wisconsin is a federally recognized Indian Tribe, and the Tribe's reservation was established by the Treaty of Wolf River in 1854. *See Menominee Tribe of Indians v. United States*, 391 U.S. 404, 405 (1968). In 1954, Congress enacted the Menominee Indian Termination Act, which terminated federal supervision over the property and members of the Menominee Indian Tribe of Wisconsin. *See* Pub. L. No. 83-397, 68 Stat. 250 (1954). In 1973, however, Congress passed the Menominee Restoration Act (MRA) to repeal the Termination Act and its prior termination policies. *See* Pub. L. No. 93-197, 87 Stat. 770. Under the MRA, "[t]he Secretary shall accept the real property (excluding real property not located in or adjacent to the territory constitution, on the effective date of this Act, the county of Menominee, Wisconsin) of members of the Menominee Tribe, but only if transferred to him by the Menominee owner or owners." *Id.* at 773.

The Association is a corporation existing under the laws of the State of Wisconsin and is an association of property owners for properties in and around Legend Lake in Menominee County, Wisconsin. The Legend Lake area was initially developed in the late 1960s. The Legend Lake Property Owners Association was created in 1972 through the filing of articles of incorporation with the State of Wisconsin and the Menominee County Register of Deeds. Membership in the Association was declared appurtenant to lot ownership.

On June 13, 2009, the Association adopted restrictive covenants. The restrictive covenants were recorded with the Menominee County Register of Deeds on June 18, 2009, and were intended to maintain the property values of Legend Lake properties by ensuring compliance with state and local governance and with the membership responsibilities of the Association, as well as to

preserve the tax base of Menominee County. All Legend Lake properties subject to the restrictive covenants could be held, sold, or conveyed in accordance with the restrictive covenants. The restrictive covenants are binding upon all parties that acquire or hold any right, title, or interest in the properties, along with their heirs, personal representatives, successors, or assigns.

As relevant here, Article 1 of the restrictive covenants contains the following restrictions on transfer:

> B. Without the express written consent of the Association, which to be effective must be duly voted upon and approved by the Association's membership by amendment to the bylaws, no owner of any interest in the Subject Real Estate to any individual, entity (whether corporation, limited liability company, limited partnership, limited liability partnership, general partnership or otherwise), organization, or sovereign or dependent sovereign nation, or during the period of ownership take any action, the result of which could or would
>
> (1) remove or eliminate the Subject Real Estate (or any part thereof) from the tax rolls of Menominee County, Wisconsin,
>
> (2) diminish or eliminate the payment of real estate taxes duly levied or assessed against the Subject Real Estate (or any part thereof),
>
> (3) remove the Subject Real Estate (or any part thereof) from the zoning authority and general municipal jurisdiction of Menominee County, Wisconsin,
>
> (4) remove the Subject Real Estate (or any part thereof) from the general municipal jurisdiction of the State of Wisconsin, to include administrative regulations duly adopted,
>
> and/or
>
> (5) remove the Subject Real Estate (or any part thereof) from the obligations and/or restrictions imposed on the Subject Real Estate (or any part thereof) by the duly adopted bylaws and resolutions of the Association, to include, without limitation, the obligation to pay all dues and assessments properly levied by the Association.
>
> C. This Restriction on Transfer of Paragraph 1 shall apply to the transfer of an interest in the entity that is an owner of the Subject Real Estate if, as a result of the transfer, any of items (1) – (5) above could or would occur. This restriction shall, among other things, expressly apply to any application to have the Subject Real Estate (or any part thereof) placed into federal trust pursuant to the Indian Reorganization Act.

> D. Any owner of an interest in the Subject Real Estate (or any part thereof) shall at all times comply with any and all municipal and Association laws, rules, regulations, and obligations as set forth in the foregoing restrictions, to include, without limitation, the property tax collection laws set forth in Chapters 74 and 75 of the Wisconsin Statutes. **The Subject Real Estate remains subject to said municipal and Association laws, rules, regulations and obligations, in rem, notwithstanding a transfer to an owner not otherwise subject to them.**
>
> E. **Any purported transfer of any interest in the Subject Real Estate (or any part thereof) in violation of these restrictions shall be null and void.**

Compl. ¶ 21, Dkt. No. 1.

Sometime after 2017, Guy F. Keshena acquired title to 40 parcels (the Properties) and is the current title owner of the Properties within the Legend Lake development. Keshena was aware of the restrictive covenants at the time he acquired the Properties. Pursuant to a Tribal authorization, Keshena took title to the Properties as "Guy F. Keshena, a single person for and on behalf of the Menominee Indian Tribe of Wisconsin." *Id.* ¶ 24. Keshena took title to the Properties for the express purpose of further conveyance of the Properties to the United States of America in trust for the Menominee Indian Tribe of Wisconsin.

Notwithstanding the restrictive covenants, the Menominee Indian Tribe of Wisconsin requested that the Properties be accepted into trust pursuant to the MRA. Shortly thereafter, the BIA's Midwest Regional Director issued determinations on June 12, 2018, June 14, 2018, and August 22, 2018, accepting the Properties into trust pursuant to 25 C.F.R. Part 151. On December 11, 2018, the Association filed a notice of appeal with the IBIA, seeking review of the Midwest Regional Director's determinations. The notice of appeal argued, among other things, that the acceptance of the Properties into trust would violate the restrictive covenants.

On March 24, 2023, the IBIA affirmed the determinations of the Midwest Regional Director. On appeal, the Association argued that the Properties are subject to the Association's restrictive covenants that prohibit transfers of properties if the transaction would remove the

property from the County tax rolls or from state and local municipal jurisdiction. Dkt. No. 1-3 at 3. The IBIA determined that the Midwest Regional Director did not err in accepting the Properties into trust because Section 6(c) of the MRA compelled such action. Section 6(c) provides:

> The Secretary shall accept the real property (excluding any real property not located in or adjacent to the territory constituting, on the effective date of this Act, the county of Menominee, Wisconsin) of members of the Menominee Tribe, but only if transferred to him by the Menominee owner or owners. Such property shall be subject to all valid existing rights including, but not limited to, liens, outstanding taxes (local, State, and Federal), mortgages, and any other obligations. The land transferred to the Secretary pursuant to this subsection shall be subject to foreclosure or sale pursuant to the terms of any valid existing obligation in accordance with the laws of the State of Wisconsin. Subject to the conditions imposed by this subsection, the land transferred shall be taken in the name of the United States in trust for the Menominee Tribe of Wisconsin and shall be part of their reservation. The transfer of assets authorized by this section shall be exempt from all local, State, and Federal taxation. All assets transferred under this section shall, as of the date of transfer, be exempt from all local, State, and Federal taxation.

87 Stat. at 773. The IBIA explained that the MRA imposes two requirements for mandatory trust acquisition on behalf of the tribe: (1) the property be located in or adjacent to Menominee County, Wisconsin and (2) the property be transferred by a member of the Menominee Tribe. Dkt. No. 1-3 at 5. It noted that, as relevant to the appeal, the Association's restrictive covenants prohibit transfer of any interest in property that is subject to its terms, without the written consent of the Association, if such transfer would result in "(1) removing the property from the County tax rolls; (2) diminishing or eliminating the payment of real estate taxes assessed against the property; (3) removing the property from County zoning authority; (4) removing the property from the jurisdiction of the state; or (5) removing the property from obligations or restrictions imposed on it by the Association." *Id.* at 6 (citing Covenants, art. 1(B)(1)–(5)). The IBIA concluded that the restrictive covenants were preempted by federal law and are unenforceable against the Secretary because they "directly interfere with and are contrary to both the terms and objectives of the MRA." *Id.* at 11.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of this court of the subject matter jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1). To survive a Rule 12(b)(1) motion, the plaintiff must establish that the jurisdictional requirements have been met. *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988). The proponent of federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he or she must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *See Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

## ANALYSIS

Before turning to the merits of Defendants' motion, the court must first address the jurisdictional requirement of whether the Association has standing to pursue this action. Federal courts do not have jurisdiction to decide every legal question that may arise. Instead, Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. U.S. Const. art. III, § 2, cl. 1. The

doctrine of standing is not an esoteric doctrine that courts use to avoid difficult decisions; it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "In light of this 'overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an important dispute and to "settle" it for the sake of convenience and efficiency.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)) (alterations omitted). "The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). The plaintiff bears the burden of establishing each element. *Id.* (citation omitted).

Defendants assert that the Association lacks standing to challenge the DOI's trust acquisitions because it has not pled an actual or imminent injury fairly traceable to DOI's actions. The Association alleges that its restrictive covenants require compliance with all Association laws, rules, regulations, and obligations, including the obligation to pay all dues and assessments properly levied by the Association. Compl. ¶ 21. The Association's purpose is to ensure maintenance and preservation of the properties in the Legend Lake Association. The Association is harmed by the removal of significant amounts of land and, in turn, dues and assessments, that would otherwise be collected by the Association. In short, the Association has pled an actual or imminent injury resulting from the DOI's acceptance of the Properties into trust. The court will now turn to the merits of the motion.

The APA authorizes suit by "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. The APA allows a district court to "hold unlawful and set aside" any agency action that is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). The Association asserts that Defendants' actions to accept the Properties into trust while also declaring the Association's restrictive covenants unenforceable was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. It argues that Defendants should have accepted the Properties into trust with the restrictive covenants attached and that the IBIA should not have made any holding as to the restrictive covenants' enforceability.

As an initial matter, the Association argues that the IBIA exceed its authority in deciding whether the restrictive covenants were preempted because a federal agency, like the IBIA, does not have the authority to decide such constitutional questions. *See* Pl.'s Br. at 16, Dkt. No. 18. But the IBIA did not improperly decide the preemption issue. Indeed, the IBIA "has full authority to review any legal issues raised in a trust acquisition case, except those challenging the constitutionality of laws or regulations." *See South Dakota v. Acting Great Plains Reg'l Dir.*, 49 IBIA 129, 141, 2009 WL 1356400, at *9 (2009) (citation omitted). In this case, the IBIA did not decide the constitutionality of a law or regulation. Rather, in considering the trust acquisition, the IBIA was required to address the Association's contention that its restrictive covenants barred the trust acquisition mandated by the MRA. Resolving the issues of whether the Association's restrictive covenants were enforceable, whether the restrictive covenants overrode the MRA's mandate, and whether they prevented the BIA from taking the Properties into trust was within the scope of the IBIA's authority.

The Association also argues that, even if the IBIA had the authority to decide the preemption issue, the MRA does not preempt the restrictive covenants. The Association concedes that the MRA mandates that the DOI accept the Properties into trust if the land is located within Menominee County and the land is transferred to the Secretary by a Menominee tribal member. *See* MRA § 6(c), 87 Stat. at 773 ("The Secretary shall accept the real property (excluding any real

property not located in or adjacent to the territory constituting, on the effective date of this Act, the county of Menominee, Wisconsin) of members of the Menominee Tribe, but only if transferred to him by the Menominee owner or owners."). Instead, the Association argues that the MRA mandates other conditions to place land in trust, including that "the transfer be subject to any property rights or obligations and any contractual rights or obligations" and "the property transferred shall be subject to all valid existing rights including, but not limited to, liens, outstanding taxes (local, state, and federal), mortgages, and any other obligations." Pl.'s Br. at 4 (citing MRA §§ 3(d); 6(c)). These additional conditions, the Association argues, are broad enough to encompass the restrictive covenants such that the MRA does not preempt them.

But Sections 3(d) and 6(c) do not impact the preemption analysis. Defendants could not have accepted the Properties into trust with the restrictive covenants attached as the Association suggests. The Association's restrictive covenants bar "any application to have the Subject Real Estate (or any part thereof) placed into federal trust pursuant to the Indian Reorganization Act" and bar any transfer of land to a "sovereign or dependent sovereign nation" that "could or would remove or eliminate the Subject Real Estate (or any part thereof) from the tax rolls of Menominee County, Wisconsin," zoning authority, and general municipal jurisdiction of the county or the State of Wisconsin. Compl. ¶ 21. The restrictive covenants state that "[a]ny purported transfer of interest in the Subject Real Estate (or any part thereof) in violation of these restrictions shall be null and void." *Id.* The BIA could not comply with both the MRA's statutory mandate to place parcels of land transferred to the Secretary by a Menominee tribal member into trust for the Menominee Indian Tribe without the exercise of discretion and the Association's restrictive covenants that prevent the BIA from taking such land into trust. In addition, the MRA's mandate that the Properties be removed from the county tax rolls and exempt from all local, State, and Federal taxation directly conflicts with the restrictive covenants' provisions that the subject real

estate cannot be removed from the tax rolls of Menominee County. Therefore, the IBIA did not act arbitrarily and capriciously in finding that the MRA conflicts with and preempts the Association's restrictive covenants that purport to bar the trust acquisitions.

The Association alternatively requests that, in the event the court finds that federal law preempts certain provisions of the restrictive covenants, the court should hold that the remainder of the restrictive covenants are not preempted and are thus valid and enforceable under the covenant's severability clause. The enforceability of the Association's restrictive covenants that were not relevant to the trust acquisitions was never addressed by the BIA or IBIA. Because this argument was not addressed in the underlying final agency decision, the court will not decide it here.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 14) is **GRANTED**. The Menominee Indian Tribe of Wisconsin's motion for leave to file an amicus brief (Dkt. No. 21) is **DENIED**. This case is dismissed. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 6th day of February, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge